Christian, J.
delivered the opinion of the court.
This case comes up to this court upon a'writ of super *3 sedeas to a judgment of the Circuit court of Pulaski , county.
^ T It was an action of assumpsit brought by J. B. Alexander to recover the amount of a check drawn in his favor on the Exchange Bank at Salem, by the in error, Francis Bell, for the sum of fourteen hundred and thirty-five dollars, and bearing date the 17th day of April 1862.
The plaintiff in error pleaded “ non assumpsitand upon this issue alone the cause was submitted to the jury.
The record discloses the following state of facts :
That in October 1861 the plaintiff' in error, Francis Bell, purchased a lot of cattle of one Morgan ; that shortly after the sale, Morgan informed Bell that he wanted the money due for the cattle to settle a debt which he, Morgan, owed to Alexander, the defendant in error. . "Whereupon Bell agreed with Morgan that he would pay the debt to Alexander, and accordingly drew the check, upon which the suit is brought, in favor of Alexander, which was accepted by the latter in payment of Morgan’s debt, and his bond surrendered to him. The debt from Morgan to Alexander was contracted in the year 1858. The check was dated April 17th, 1862. ÍTothing was said by any of the parties as to the kind of currency in which the check was to he paid, and upon its face it directed the payment of fourteen hundred and thirty-five dollars, which was the amount of Morgan’s debt to Alexander contracted in 1858.
It was further proved that in the spring of 1862 the currency paid out by the Bank at Salem consisted of Virginia hank notes, Virginia treasury notes and Confederate treasury notes, which then circulated as of equal value. It was also proved that the check was presented at the Exchange Bank at Salem, in the month of April 1863, and payment demanded, which was refused; the cashier stating that all the fands of the plaintiff in error had been drawn out a few days before. On behalf of the *4 plaintiff in error, was offered a certified account with said bank, by which it appeared that on the 25th of Au- ' gust 1862, he had drawn out all his funds, and that he made no further deposits, until the 6th day of April 1868, ^ v x when there was placed to his credit the sum of one thousand nine hundred and fourteen dollars. But this amount was withdrawn on the 27th of the same month, so that it appears from the evidence furnished , by the plaintiff in error, that from the 25th day of August 1862, to the 6th day of April 1863, a period of nearly eight, months, he did not have one dollar in hank to meet the check for fourteen hundred and thirty-five dollars which he had drawn in favor of the defendant in error. -
It was further proved on the part of the plaintiff in error, that in the fall of 1862, and thence afterwards, the bank at Salem paid out no other funds than Confederate treasury notes, and he also offered in evidence a scale of depreciation, prepared by the banking house of Miller & Franklin, of the city of Lynchburg. TJpon this evidence, and upon certain instructions given by the court, the jury found a verdict for the whole amount called for by the check, with interest from its date. Amotion for a new trial was made upon the ground that the verdict was contrary to the evidence ; which was overruled by’ the court, and judgment entered in accordance with the verdict. A writ of supersedeas to that judgment brings the case before this court.
The errors, assigned by the plaintiff’ in error, are :
1. “That the court erred in refusing to give the instruetions in the form in which they were asked for, giving the same in a modified form; and also in giving the first instruction asked for, by the defendant in error; and
2. 44 That the court was in error in refusing to set aside the verdict of the jury and grant a new trial.”
The first instruction asked for by the plaintiff in error was as follows:
44 If the jury shall believe from the evidence that the *5 defendant gave the plaintiff the check in the declaration mentioned on the 17th day of April 1862, and when he gave it, he had funds in hank on which it was sufficient to pay it, and continued to have funds in hank sufficient to pay it until the 27th day of April 1863; and if the jury shall further believe that the plaintiff retained the said check in his possession, and did not present it to said bank until after the said — day of April 1863 ; and if the jury shall further believe that the said check was duly presented to said bank for payment on the — day of April 1863, and that payment was refused on that day, and that no other presentation of the said check was made to the said bank; then the plaintiff’s cause of action arose on the said — day of April 1863, and he is only entitled to recover the value of said check on the said — day of April 1863, with interest thereon,”
The court refused to give this instruction in the form it was offered, but added the words, “ provided the jury shall believe it to be a Confederate contract.” It is to this modification or addendum that the plaintiff in error objects.
This court is of opinion that there was no error in the modification made by the Circuit court to this instruction. Indeed, without such modification, the instruction would have been plainly erroneous. Upon the hypothesis assumed in the instruction, the jury were told that they could only find the value of the check on the — day of April 1863, the day of its presentation, without finding either the fact that the drawer had sustained damage or loss from the delay of presentation, or the further fact that the check was payable in Confederate currency. One or the other of these conditions was necessary to support the hypothesis upon which the instruction was based. But it was earnestly insisted by the learned counsel, who argued the ease here, that there was error in the modification made by the court below ; because the instruction as moved was intended to assert *6 a principle of commercial law independent of the statute scaling Confederate contracts. It is true that a check a bank is a commercial instrument in the nature of a bill of exchange payable on demand, and generally it to present it for payment within a reasonable time, otherwise the holder takes upon himself the risks of the bank’s responsibility.' But there is a material difference between the drawer of a check and the drawer of a bill of exchange. The drawer of a check is not discharged by the holder’s failure to present the same in due time, unless he has sustained actual damage or loss. Byles on Bills, 78; Story on Promissory Notes, § 497.
The drawer of a check is in no case discharged from his responsibility to pay the same, unless he has suffered some loss or injury by the omission or neglect to make such presentment, and then only “pro tanto.” 3 Kent’s Com., 5th ed., p. 104, and note; 3 John. Cases, 5; Id. 259; 6 Cow. R. 490; 10 Wend. R.306; 2 Hill N. Y. R. 425, 428, 429; Story on Promissory Notes, § 497-498.
When the drawer, at the date of the check, or at the time of the presentment of it for payment, had no funds in the bank, or if, after drawing the check, and before its presentment for payment or dishonor, he had withdrawn his funds, the drawer would remain liable to pay the check, notwithstanding the lapse of time.
When a party draws a check upon a bank, he appropriates and dedicates the amount of the cheek to the use of the drawee; and we take it to be clear, that the drawer impliedly engages that, at the time when the check is due and payable, he .has, and will have then, and at all times thereafter, sufficient funds in bank to pay the same upon presentment, for by the draft he appropriates those funds absolutely for the use of the holder. Story on Promissory Notes, § 498, and note. If he withdraws the funds, he is guilty of a manifest *7 wrong in thus substracting the very funds already appropriated to the payment of the cheek. Id.; and Conroy v. Warren, 3 John. Cases, 259. While, therefore, law makes it the duty of the holder to present his check within a reasonable time, yet the holder does not lose his remedy against the drawer by failure to present it, unless it can be shown the drawer has suffered loss or damage in consequence of such delay. So that, putting the case upon the ground insisted upon by the appellee, and taking his theory of the instruction under consideration, the court is of opinion that the Circuit court committed no error in rejecting the instruction in the form 'in which it was offered ; for, as before observed, one two conditions was necessary to support the hypothesis upon which the instruction was based, to wit; either that the drawer had been prejudiced by the delay in presenting the check, or that the check was payable in Confederate currency. The court below might well have rejected the instruction as offered.
But was there any error in the modification or addendum made by the court? “Provided the jury shall believe it to be a Confederate contract.” We think not. The court had been asked to instruct the jury that, upon a certain state of facts proved, the plaintiff" was “only entitled to recover the value of said check on the said — day of April 1863.” The plaintiff" in error had offered in evidence a broker’s scale of depreciation of Confederate currency, and the instruction pointed in terms to that depreciation. It was, therefore, not only not erroneous, but highly proper, that the court should have added the words : “ Provided that the jury shall believe it to be a Confederate contract.”
Another error assigned] is, that the court refused to give the second instruction asked for by the plaintiff" in error in the form in which it was asked,i;and gave the same in a modified form.
This instruction is in these words : “If the jury shall *8 believe from the evidence that when the said check was given> 011 tbe 17th day of April 1862, the parties understood and agreed that it would be paid in Confederate treasury notes ; and if the jury shall also believe, that on t}ie ^7th day of April 1862, when this check was drawn, the banks in Virginia generally, and especially the bank on which the check was drawn, were paying only Confederate treasury notes, and continued so to pay Confederate treasury notes until after the month of May 1863, and if the jury shall further believe, that the said check was duly presented for payment at said bank on the — day of April 1863, and payment was then refused, and this was the only presentation and refusal of payment, then the jury in ascertaining the plaintiff’s damages are to assess them in the value of Confederate treasury notes on the said — day of April 1863.”
To this instruction the court added the words : “Scaling the same by such rule as to the jury may seem right under all the evidence in the case.” •
Thus modified, the instruction was given. We are of opinion that there was no error in this modification of the instruction. The statute authorizing the scaling of Confederate contracts prescribes no fixed rule by which it shall be done. The statute simply provides that, “such contracts,” &c., “shall be liquidated by reducing the nominal amount to its true value at the time they were respectively made and entered into, or at such other time as may to the court, or if it be a jury case, to the jury, seem right -in the particular case.” Sess. Acts 66-7, ch. 270, § 2, p. 695.
The statute prescribing no rule or scale of depreciation, it is for the jury to fix it in each case upon the evidence before them.
We do not think that there was any error in giving the first instruction asked for by the plaintiff’s counsel, it was but the converse of the other instructions, and in effect instructed the jury that the debt should not be *9 scaled unless the jury were satisfied that it was the express or implied understanding or agreement of the parties that the chock was to be paid in Confederate curreney.
It is difficult to conceive how these instructions could in any way prejudice the defendant, and even if they were erroneous, the judgment would not be reversed on that account, as they manifestly could not operate to his prejudice or injury. Colvin v. Menefee, 11 Gratt. 87.
The remaining error assigned is the refusal of the court to set aside the verdict and grant a new trial, because the verdict was contrary to the evidence.
The principles governing new trials are now too well settled by this court to admit of doubt or dispute.
A new trial asked on the ground that the verdict is contrary to the evidence, ought to be granted only in a case of a plain deviation from right and justice, and not in a doubtful case.
This court will set aside a verdict because it is contrary to the evidence, only in a case where the jury have plainly decided against the evidence or without evidence. 6 Leigh, 230; 2 Gratt., 594; and 6 Gratt., 723.
In the case before us, the jury have found for the defendant in error the whole amount of the check with interest from the date. They have in effect said, that the contract was not according to the true understanding and agreement of the parties payable in Confederate currency, or made with reference to that currency as a standard of value. They have also in effect, said by their vervict, that the plaintiff in error has sustained no loss or damage in consequence of the delay in presenting the check.
These questions were fairly submitted to the jury and fairly responded to by their verdict. This court cannot say that this verdict was found contrary to the evidence or without evidence, but on the contrary, we are of opinion that the facts disclosed in the record strongly support *10 the verdict. The check in question was given for a debt contracted in the year 1858. At the time it was given, Confederate currency was but slightly depreciated, and that depreciation scarcely known to any others but to bankers and brokers and dealers in money. Nothing was said about the kind of currency in which it was to be paid, and the hank upon which it was drawn was then paying out State bank notes, Virginia treasury notes and Confederate treasury notes as of equal value. The fact that the drawee pi’esented the check for payment in 1863, when only Confederate currency was in circulation, ought not to be weighed as a circumstance of any importance against the other pregnant facts in the case. His willingness to accept Confederate currency at that time, can impose no obligation now, especially in favor of a party whose own default prevented him from receiving it then. Nor is it shown that the drawer suffered any loss or damage in consequence of the delay in presenting the check.
Before he can avail himself of such a defence, he must show that he kept a fund in bank appropriated absolutely and exclusively to meet the check which he had given. So far from showing this, he proves by evidence he introduced, that for nearly eight months he had not a dollar in bank, and whatever conflict of testimony there may he as to the date of the presentation of the check and the date of the last deposit, it is a conceded fact, that the bank refused to pay his check upon the ground that he had drawn out all his funds. He cannot now he permitted to take advantage of his own default.
We are therefore of opinion, that the judgment of the Circuit court of Pulaski county he affirmed.
Judgment affirmed.